THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DAVID DELAITTRE, | Case No. C15-1905-RAJ |
| Plaintiff, | |
| v. | **ORDER** |
| NANCY A. BERRYHILL, in her official capacity as Acting Commissioner of the UNITED STATES SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

This matter comes before the Court on the parties' motions for partial summary judgment. Dkt. ## 30, 34. Both motions are opposed. Dkt. ## 39, 46. For the reasons that follow, the Court **DENIES** Plaintiff's Motion (Dkt. # 30), and **GRANTS in part** and **DENIES in part** Defendant's Motion (Dkt. # 34).

**I.     BACKGROUND**

Plaintiff David DeLaittre is the Regional Chief Administrative Law Judge ("RCALJ") for Region 10 in the Office of Hearing Operations (formerly the Office of Disability Adjudication and Review) ("ODAR") for the Social Security Administration ("SSA") in Seattle, Washington. Dkt. # 5 at ¶ 4. He is a 71-year-old blind male. Dkt. # 5 ¶ 8. Plaintiff became an Administrative Law Judge ("ALJ") with the SSA on July 14, 1991. He became the RCALJ for Region 10 on or about July 31,

ORDER - 1

2000. *Id.*; Dkt. # 36 Ex. 1. As RCALJ for Region 10, he is the head of ODAR for Region 10, and is in the supervisory chain of all employees in Region 10 who work for ODAR. *Id.*

In 2013, a female subordinate employee made a complaint of harassment and hostile work environment against Plaintiff. The SSA then began an investigation into the complaint. Dkt. # 5; Dkt. # 36 Ex. 1. On December 27, 2013, Deputy Chief Administrative Law Judge John Allen, Plaintiff's supervisor, placed Plaintiff on administrative leave pending disciplinary action. Dkt. # 5 ¶ 29. During the course of the investigation, other subordinate employees and a regional executive described additional instances in which they alleged that Plaintiff engaged in sexual harassment of other employees or engaged in other inappropriate behavior. Dkt. # 5 ¶ 24; Dkt. # 36 Ex. 1. Specifically, these employees alleged that Plaintiff made comments stereotyping employees based on their sex, race, and national origin, disclosed employees' medical conditions to subordinates who did not have a need to know, grabbed and touched a female employee inappropriately in an elevator, and told a female regional executive that she was so beautiful that she could be his girlfriend. Dkt. # 36 Ex. 1. Investigators also learned that Plaintiff was improperly using the parking pass assigned to the RCALJ position by letting two subordinate employees use the parking pass in exchange for occasionally driving Plaintiff to various places during and outside of work time. *Id.* Judge Allen interviewed Plaintiff during the investigation regarding these allegations. Dkt. # 36 Ex. D. On February 18, 2014, Plaintiff wrote a letter to Judge Allen detailing alleged defects and deficiencies in Defendant's investigation. Dkt. # 5 ¶¶ 40, 41. Judge Allen then forwarded this letter and the attachments to the investigators. Dkt. # 36 Ex. D.

On or about December 12, 2014, Judge Allen informed Plaintiff that his executive assistant, Kathleen Williams, would no longer be assisting him in duties that

provided a reasonable accommodation for his disability, but would instead be working on assignments specific to her position as an executive assistant. Judge Allen noted that an additional individual would be hired to assist Plaintiff. Dkt. # 1 Ex. C. On February 19, 2015, after review of the results of the investigation, Chief Administrative Law Judge Debra Bice determined that the incidents alleged in the complaint did not show that Plaintiff subjected the female subordinate employee to a hostile work environment or harassment as defined by law. Dkt. # 36 Ex. 1. However, based on the statements made by employees in their investigative interviews, the CALJ Bice decided to seek a reduction in Plaintiff's grade for conduct unbecoming a federal employee. *Id.* CALJ Bice also temporarily removed Plaintiff's supervisory duties. Dkt. # 36 Ex. E. On March 23, 2015, Judge Allen informed Plaintiff that Defendant had determined that he was not using the parking pass assigned to the RCALJ position and asked that it be returned. Dkt. # 1 Ex. D.

In October 2015, the Merit System Protection Board ("MSPB") held a hearing on the SSA's charge that there was good cause for a reduction in Plaintiff's grade. Plaintiff was present at the hearing and represented by counsel. During the hearing, Susan Brown, the Regional Management Officer of Region 10, and Lorraine Vega, Regional Director of Operations and Administration of Region 10, gave testimony in support of the SSA's charge. In her testimony, Vega alleged that Plaintiff gave her an "unwelcomed hug and kissed her on the cheek in the elevator at the office." Dkt. # 36 Ex. 1.

On December 4, 2015, prior to the issuance of the MSPB's decision, Plaintiff filed this lawsuit. The Complaint was then circulated in the region. Dkt. # 32 Exs. C, D. Vega later stated that she felt that the Complaint contained "very negative and damaging information about [her], which [she] consider[s] to be slander." *Id.* That same day, Vega made a complaint by email to executives at ODAR that Plaintiff

ORDER - 3

was harassing her for participating in the MSPB proceedings. Dkt. # 47 Ex. 1. Around this same time, Reginald Jackson, senior advisor to the Deputy Commissioner, relayed to Assistant Deputy Commissioner for ODAR, Donna Calvert, that Brown had also complained that Plaintiff was harassing her. *Id.*; Dkt. # 47 Ex. 2.

On December 7, 2015, Vega met with Calvert and Deputy Commissioner Theresa Gruber regarding her allegations. Vega told them that Plaintiff was intentionally walking by her office and "lurking" outside her office door in an attempt to intimidate and harass her. Dkt. 47 Ex. 2. Vega indicated that this alleged harassment was not verbal, but limited to her allegation that Plaintiff was frequently listening and lingering outside of her office. Dkt. # 32 Ex. E. Calvert had also heard from Acting RCALJ Lyle Olson that the regional office was experiencing a high level of tension. Dkt. # 48. After the meeting, Calvert decided to refer the complaint to a Harassment Prevention Officer ("HPO") in the Office of Labor Management and Employee Relations ("OLMER"). Dkt. 47 Ex. 2. Calvert was not involved with the subsequent investigation and made no attempt to ascertain the truthfulness of the allegations. *Id.* Calvert also decided to place Plaintiff on administrative leave during the investigation due to the reports of tension in the regional office and in an effort to follow Defendant's "general practice of separating accusers from the accused." Dkt. # 48. Judge Allen informed Plaintiff of this decision by email on December 18, 2015. Dkt. # 5 Ex. F.

In December 2015, HPO Celene Wilson received Vega's harassment complaint and was advised that Brown had made an oral complaint with similar allegations. Dkt. # 49. After interviewing both Brown and Vega, she determined that an investigation was necessary and assigned two investigators and an Independent Reviewer to the investigation. The investigators interviewed a total of ten people, including people mentioned or suggested by witnesses or people that were physically

ORDER - 4

located where they could have heard or seen the incidents described by other witnesses. Dkt. # 50. After the interviews, the investigators prepared a first-party statement in essay form to document the witnesses' responses during the interview. These statements were given to the witnesses to review, make suggested changes in pen and ink, and then to sign. Wilson then provided the file with the witness statements to the Independent Reviewer for her determination. Dkt. # 49. After reviewing the information from the investigation, the Independent Reviewer determined that Plaintiff's alleged conduct did not rise to the level of harassment so as to constitute a hostile work environment under the law. Dkt. # 32 Ex. K.

After the Independent Reviewer made her determination, Calvert was informed of the outcome and was provided with the witness statements. Calvert read the statements and spoke to Judge Olsen, Judge Allen, and CALJ Bice. Olson told Calvert that, based on his own personal observations, he believed Plaintiff was walking by the offices deliberately and pausing outside of manager's offices despite having alternative routes to use the restroom or any other place Plaintiff would need to be with the frequency with which it was happening. Dkt. # 48. After reading the witness statements and speaking to Judge Olson, Calvert concluded that the regional office was experiencing a large amount of tension that needed to be addressed. Calvert also concluded that Plaintiff was "lurking" outside offices. Calvert then made the decision to alleviate that tension by moving Plaintiff to an office outside of ODAR. *Id.*

After Plaintiff moved offices, it was brought to Calvert's attention that the office had noise or vibration issues and that Plaintiff needed to be moved to a new office. ODAR had no other space available in the same building as the regional office. Calvert authorized the work to determine whether the noise or vibration issues could be mitigated. When it was determined that the issues could not be solved, she directed the current Acting RCALJ Rolph to locate alternative space. Calvert also contacted

ORDER - 5

Regional Commissioner Stanley Friendship for assistance locating alternative space. Two possible spaces were identified, and Plaintiff was offered the choice between those two. Calvert then authorized the expenditures to build out the selected space. *Id.* In February 2016, Plaintiff was advised that his office would be relocated and that the National Hearing Center would be notified that he would be returning to duty and would be available to resume hearing and deciding cases. Dkt. # 32 Ex. L. By March 1, 2016, Plaintiff had returned to his duties. Dkt. # 32 Ex. S. On April 13, 2016, the MSPB found that the SSA met its burden of proving by a preponderance of evidence that Plaintiff engaged in "conduct unbecoming a federal employee and that good cause exists to discipline [Plaintiff]." Dkt. # 36 Ex. 1.

On or about November 26, 2014, Plaintiff filed a complaint with the EEO alleging discrimination based on age, sex, and disability, and retaliation. Dkt. # 5 ¶ 50. On January 19, 2016, Plaintiff filed an Amended Complaint against Defendant alleging discrimination based on his disability, age, sex, and religion. Plaintiff also alleges that Defendant violated his due process rights, engaged in retaliation against him, and failed to accommodate his disability. Dkt. # 5. On October 30, 2017, Plaintiff filed a motion for summary judgment of his retaliation claim. Dkt. # 30. On October 31, 2017, Defendant filed a motion for summary judgment of Plaintiff's claims for discrimination based on his religion and age, due process, and his claim that the SSA failed to accommodate his disability. Dkt. # 34. In Defendant's Motion, Defendant represents that Plaintiff is no longer pursuing his claims for discrimination based on his religion or age. Dkt. # 34; Dkt. # 35. Plaintiff does not dispute this representation. Therefore, Defendant's motion is granted as to Plaintiff's claims of age and religious discrimination[1]. Dkt. # 34.

---

[1] As the Court interprets this as a voluntary dismissal, this should not be construed as a dismissal based on the merits of Plaintiff's claims.

## II. LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc*., 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. *Celotex Corp*., 477 U.S. at 325. If the moving party meets the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue of fact for trial in order to defeat the motion. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Reeves v. Sanderson Plumbing Prods*., 530 U.S. 133, 150-51 (2000).

However, the court need not, and will not, "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996); *see also, White v. McDonnel-Douglas Corp.*, 904 F.2d 456, 458 (8th Cir. 1990) (the court need not "speculate on which portion of the record the nonmoving party relies, nor is it obliged to wade through and search the entire record for some specific facts that might support the nonmoving party's claim"). The opposing party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).

Uncorroborated allegations and "self-serving testimony" will not create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002); *T.W. Elec. Serv. V. Pac Elec. Contractors Ass'n*, 809 F. 2d 626, 630 (9th Cir. 1987).

## III. DISCUSSION

As a preliminary matter, Defendant moves to strike portions of Plaintiff's declarations submitted in support of his Motion and in opposition to Defendant's Motion, pursuant to Local Rule 7(g). Defendant argues that several paragraphs contain legal argument and conclusions, inadmissible hearsay, lack foundation, and are irrelevant to issues raised by Plaintiff's Motion for Summary Judgment. To the extent that Plaintiff's declaration contains any improper legal argument or conclusions or inadmissible hearsay, it will not be considered for the purposes of Plaintiff's Motion for Summary Judgment. As to the statements that Defendant argues lack foundation, "[t]o survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56." *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001). The Court makes no judgment on whether Plaintiff will be able to lay a foundation for these statements at trial, but will consider statements that meet the requirements of Rule 56 for the purposes of this Motion. Finally, to the extent that Plaintiff's declaration contains irrelevant information for the purposes of Plaintiff's Motion, or constitutes speculative and conclusory allegations, it will not be considered here.

A. <u>Retaliation Claim</u>

The Court analyzes Plaintiff's state and federal retaliation claims under the same framework. *Stegall v. Citadel Broad. Co*., 350 F.3d 1061, 1065-1066 (9th Cir. 2003) (finding that Washington courts look to federal law when analyzing retaliation

claims, and utilizing the three-part burden shifting test described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). To establish a prima facie case of retaliation, a plaintiff must demonstrate that (1) he engaged in a statutorily protected activity, (2) defendants took some adverse employment action against him, and (3) there is a causal connection between the protected activity and the adverse employment action. *Id.* at 1065-1066; *Corville v. Cobarc Servs., Inc.*, 869 P.2d 1103, 1105 (Wash. Ct. App. 1994). If a plaintiff establishes a prima facie case, the evidentiary burden shifts to the employer to produce admissible evidence of a legitimate, nondiscriminatory reason for the discharge. *Stegall*, 350 F.3d at 1066; *Hollenback v. Shriners Hospitals for Children*, 206 P.3d 337, 344 (Wash. Ct. App. 2009). If the employer meets its burden, the presumption is removed and the employee must then establish a genuine issue of material fact as to pretext. *Stegall*, 350 F.3d at 1066; *Hollenback*, 206 P.3d at 344.

The bias of an ultimate decisionmaker's subordinate can be imputed to the decisionmaker if, "a subordinate, in response to a plaintiff's protected activity, sets in motion a proceeding by an independent decisionmaker that leads to an adverse employment action" and if the plaintiff can prove that "the allegedly independent adverse employment decision was not actually independent because the biased subordinate influenced or was involved in the decision or decisionmaking process." *Poland v. Chertoff*, 494 F.3d 1174, 1182 (9th Cir. 2007); *see also Staub v. Proctor Hospital*, 562 U.S. 411 (2011); *Bergene v. Salt River Project Agric. Improvement & Power Dist.*, 272 F.3d 1136, 1141 (9th Cir. 2001); *Galdamez v. Potter*, 415 F.3d 1015, 1026 n. 9 (9th Cir. 2005); *Lakeside-Scott v. Multnomah County*, 556 F.3d 797 (9th Cir. 2009). Plaintiff argues that Vega had "clear animus" toward him due to his disability and need for accommodation and that this animus led to her complaint of harassment. Plaintiff further argues that he was put on administrative leave, removed from his

office and placed in an unsuitable alternative office, and was limited to only hearing cases by video as a direct result of these allegations. Dkt. # 30. The parties do not dispute whether Plaintiff engaged in a statutorily protected activity.

The Court finds that there is a genuine issue of material fact as to the causal connection between Plaintiff's protected activity and the alleged adverse employment actions. To establish the element of causation in a subordinate bias case where the investigation that led to the adverse employment action was initiated by the biased subordinate, Plaintiff must show that "the allegedly independent adverse employment decision was not actually independent because the biased subordinate influenced or was involved in the decision or the investigation thereto." *Poland*, 494 F.3d at 1184. First, there is an issue of fact as to whether the investigation into Plaintiff's behavior was initiated by Vega, as Plaintiff alleges. Although Calvert stated that she made the decision to refer Vega's complaint to OLMER after her meeting with Vega and Deputy Commissioner Theresa Gruber, both Vega and Brown made complaints of harassment. Calvert also stated that she took into account observations shared by Olson about office tension. It is unclear exactly when Brown made her initial verbal complaint, or what her complaint entailed, only that that the allegations in Brown's complaint sounded similar to the allegations made by Vega. Further, the email sent by CALJ Bice initiating the referral to OLMER for possible investigation forwarded an email from Vega as the "alleging employee". Dkt. # 32 Ex. A. It is possible that Vega's complaint was the impetus for the investigation, and it is also possible that Calvert was influenced by both Brown and Vega's complaints and the report from Judge Olsen.

Even if it was clear that the investigation was initiated by Vega, the Court finds that there is also an issue of material fact as to whether she influenced or was involved with the adverse employment decision or the investigation, or whether the adverse

ORDER - 10

employment decision was the result of an "entirely independent investigation". *See Poland*, 494 F.3d at 1183 ("[I]f an adverse employment action is the consequence of an entirely independent investigation by an employer, the animus of the retaliating employee is not imputed to the employer."). In *Poland*, the biased subordinate asked his employer to undertake an administrative inquiry into the plaintiff, provided a lengthy memo outlining the plaintiff's numerous incidents of malfeasance and provided a list of twenty-one witnesses to be interviewed. The inquiry panel then interviewed these twenty-one witnesses and consulted notes from another employee provided by the biased subordinate. The Ninth Circuit concluded that the biased subordinate had a "pervasive influence" on the administrative inquiry that led to the adverse employment action. Here, while it is possible that Vega's complaints initiated the investigation, there is a question of fact as to whether her involvement in the investigation was "pervasive". According to HPO Wilson, she determined an investigation was necessary after interviewing both Brown and Vega. Vega was also interviewed by the investigators. There is no other evidence on the record that Vega was involved in any other way with the investigation, or any decisions leading to the alleged adverse employment actions. Vega was one of ten witnesses interviewed during the course of the investigation. There is also no evidence that she controlled the course of the investigation or which witnesses should interviewed. Therefore, there is a genuine issue of material fact such that summary judgment of Plaintiff's retaliation claim would be inappropriate. Plaintiff's Motion for Partial Summary Judgment is **DENIED.** Dkt. # 30.

B. Due Process

Plaintiff alleges that Defendant took adverse employment action against him without "prompt, thorough, and impartial investigation" in violation of the Fifth Amendment. Dkt. # 5. Plaintiff also argues that he was deprived of his due process

rights throughout both investigations and because Defendant's failed to inform him of the accusations against him in the MSPB complaint and throughout the MSPB hearing. However, to state a claim for due process under the Fifth Amendment, Plaintiff must have a "constitutionally protected liberty or property interest at stake". *Nevada Dep't of Corr. v. Greene*, 648 F.3d 1014, 1019 (9th Cir. 2011). "Property interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law....'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538, 105 S. Ct. 1487, 1491, 84 L. Ed. 2d 494 (1985) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2708–2709, 33 L.Ed.2d 548 (1972)). Plaintiff argues that he had a property interest in his duties and position as RCALJ, and that this position was taken away from him without proper due process.

While a federal employee can have a property interest in his continued employment, Plaintiff cites to no case law supporting his argument that an ALJ has a property interest in his designation as RCALJ. *Loudermill*, 470 U.S. at 538. Plaintiff relies on the holding in *Loudermill* to support his argument that federal public employees are guaranteed the right to specific notice of charges against them and an opportunity to respond prior to being deprived of their employment. However, the holding in *Loudermill* is inapposite to the facts at issue here. *Loudermill* involves the due process rights allotted to a federal employee prior to discharge. Plaintiff was not discharged and is still employed by Defendant. Where an ALJ serves as a supervisory ALJ at the will and pleasure of his employer, he does not have a property interest in the continued designation of supervisor. *See Bridges v. Comm'r Soc. Sec.*, 672 F. App'x 162, 168 (3d Cir. 2016), *cert. denied sub nom. Bridges v. Berryhill,* 138 S. Ct. 200, 199 L. Ed. 2d 117 (2017) (finding that the plaintiff did not have a property interest in his designation as Hearing Office Chief Administrative Law Judge).

Plaintiff also argues that he suffered reputational harm due to Defendant's actions, citing *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971) for the proposition that he has a right to "notice and an opportunity to be heard" because his reputation is at stake. Plaintiff argues that he was unaware that Vega had made allegations of sexual assault or harassment and that he was denied the opportunity to respond to rumors regarding these allegations because he was restricted from speaking to other regional employees about the investigation. However, "procedural due process protections apply to reputational harm only when a plaintiff suffers stigma from governmental action plus alteration or extinguishment of 'right or status previously recognized by state law.'" *Humphries v. Cty. of Los Angeles*, 554 F.3d 1170, 1185 (9th Cir. 2009), *as amended* (Jan. 30, 2009) (quoting *Paul v. Davis*, 424 U.S. 693, 711, 96 S. Ct. 1155 (1976)). While accusations of sexual harassment or assault are undoubtedly stigmatizing, Plaintiff fails to identify a right or status previously recognized by state law that was altered or extinguished by Defendant's actions. Therefore, Defendant's Motion for Summary Judgment of Plaintiff's due process claim is **GRANTED.**

C. Failure to Accommodate

Under the Rehabilitation Act[2], public entities are required to make "reasonable modifications in policies, practices, or procedures when modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program or activity." 29 C.F.R. § 35.130(b)(7). Plaintiff bears the burden of showing that he is disabled within the meaning of the Rehabilitation Act. If he is disabled and accommodation to his disability is required to enable him to perform essential job

---

[2] The standards used to determine whether an act of discrimination violated the Rehabilitation Act are the same standards applied under the Americans with Disabilities Act ("ADA"). *Coons v. Sec'y of U.S. Dep't of Treasury*, 383 F.3d 879, 884 (9th Cir. 2004)

functions, plaintiff has the burden of producing evidence that reasonable accommodation is possible. *Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002); *Buckingham v. United States*, 998 F.2d 735, 740 (9th Cir. 1993). The burden then shifts to Defendant to produce rebuttal evidence that the requested accommodation was not reasonable. *Id.*

Defendant argues first that Plaintiff failed to administratively exhaust all of his specific claims regarding Defendant's failure to accommodate his disability, and is thus limited to his claims regarding Defendant's modification of Plaintiff's assistant/reader and the removal of Plaintiff's parking pass. Defendant is correct that a federal employee must exhaust her available administrative remedies prior to bringing a discrimination claim in federal court under either Title VII of the Civil Rights Act or the Rehabilitation Act. 29 C.F.R. § 1614.105(a); *Shepard v. Winter*, 327 F. App'x 691, 693 (9th Cir. 2009). However, courts must construe the scope of the EEOC charge liberally. Plaintiff's court action is not limited to the EEOC charge itself, but whether the original EEOC investigation would have encompassed the additional charges. This includes allegations occurring before and after the filing of the EEOC charge. *See Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990). While Plaintiff's additional allegations regarding Defendant's failure to accommodate his disability may not be specifically included in his EEOC charge, these allegations are sufficiently "like or reasonably related to" Plaintiff's EEOC allegations to establish this Court's jurisdiction. *Id.*

It is undisputed that Plaintiff disabled and that accommodation to his disability is required to enable him to perform essential job functions. Plaintiff alleges that Defendant failed to accommodate his disability by removing or modifying Plaintiff's existing reasonable accommodations, including his assistant/reader, his office space, and his parking pass. Plaintiff argues that Defendant failed to accommodate him when

they removed him from his office to a new, unsuitable office space because of concerns that his tendency to linger outside offices could be perceived as disruptive. Dkt. # 32 Ex. 12. At issue is not whether Defendant improperly moved Plaintiff from his previous office, but whether Defendant failed to reasonably accommodate Defendant's request for a quiet office. As noted above, after Plaintiff indicated that his new office was unsuitable, Defendant eventually arranged for Plaintiff to be moved to a different space. Plaintiff does not indicate whether this current office is also unsuitable, only that his previous office was distant and noisy. It is unclear from the record whether this second move accommodated Plaintiff's request for a quiet office.

Plaintiff also argues that Defendant failed to accommodate Plaintiff's need for a sighted executive assistant because they attempted to remove Kathleen Williams as Plaintiff's executive assistant/reader. Plaintiff testified in his deposition that despite this attempt, Williams was never removed as his reader, but eventually had to retire due to poor health. Dkt. # 35 Ex. 1. After Williams ceased working as Plaintiff's reader, the agency provided another person to serve as his reader until a permanent replacement was found. *Id.* When providing an employee with a reasonable accommodation,"[a]n employer is not obligated to provide an employee the accommodation he requests or prefers, the employer need only provide some reasonable accommodation." *Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002). As Defendant continuously provided Plaintiff with a reader, there is no evidence that Defendant refused to reasonably accommodate Plaintiff in this way.

Finally, Plaintiff argues that Defendant's removal of his parking pass was a failure to accommodate his need to be able to commute to work in a reliable and safe manner. Dkt. # 5 ¶ 59. Plaintiff contends that he provided this pass to two co-workers who routinely drove him to work so that he would not have to rely on family support

ORDER - 15

or public transportation for his commute. *Id.* Defendant argues that Plaintiff gave this parking pass to his friends, and that these employees only occasionally drove him and used the pass exclusively for themselves the rest of the time. One employee drove him to work and occasionally drove him home and another drove him home and "seldom" drove him to work. Dkt. 53 # Ex. G. Defendant further argues that it was not required to allow Plaintiff to use the pass in this way, or to allow Plaintiff to use a subordinate to drive him to and from work. At issue is not whether Defendant believed that Plaintiff was improperly using the parking pass, but whether Plaintiff's removal of the parking pass was a failure to reasonably accommodate his disability. While Plaintiff is able to commute by bus or through family support, "an employer has a duty to accommodate an employee's limitations in getting to and from work." *Humphrey v. Memorial Hospitals Ass'n*, 239 F.3d 1128, 1135 (9th Cir. 2001). The Court finds that there is an issue of material fact as to whether Plaintiff's use of a parking pass in exchange for rides to work is a reasonable accommodation for Plaintiff's disability-related difficulties in getting to work.

The Court finds that there is a genuine issue of material fact as to whether Defendant failed to accommodate Plaintiff's disability by moving him to new office space and through the removal of Plaintiff's parking pass. Therefore, Defendant's Motion for Summary judgment of Plaintiff's failure to accommodate claim is **DENIED.**

//

//

//

## IV. CONCLUSION

For all the foregoing reasons, the Court **DENIES** Plaintiff's Motion for Summary Judgment, and **DENIES in part** and **GRANTS in part** Defendant's Motion for Summary Judgment. Dkt. ## 30, 34.

Dated this the 28th day of December, 2017.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge